J. Sean Lemoine
State Bar No. 24027443
Jonathan S. Covin
State Bar No. 24031975
Lauren K. Drawhorn
State Bar No. 24074528
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 900
Dallas, TX 75204
Telephone:  (214) 692-6200
Facsimile:  (214) 692-6255

SPECIAL COUNSEL FOR THE CHAPTER 7 TRUSTEE

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| WILLIAM GARY STAPLETON | § | CASE NO. 14-42478 |
| | § | |
| DEBTOR | § | CHAPTER 7 |
| | § | |
| MICHELLE H. CHOW, CHAPTER 7 TRUSTEE, | § | |
| | § | |
| | § | |
| Plaintiff | § | ADV. PRO. NO. _____ |
| | § | |
| v. | § | |
| | § | |
| LAURA L. STAPLETON, STAPLETON ENTERPRISES, INC., and WILLIAM D. STAPLETON | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

### TRUSTEE'S ORIGINAL COMPLAINT

Plaintiff Michelle H. Chow, Chapter 7 Trustee in the above-referenced bankruptcy case

("Plaintiff" or "Trustee") files this Original Complaint (the "Complaint") and in support thereof

respectfully alleges as follows:

# I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  This adversary proceeding involves core claims under 28 U.S.C. § 157(b) and non-core claims under 28 U.S.C. § 157(c).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

# II.
## PARTIES

3.      Plaintiff is the Chapter 7 Trustee in the above-referenced bankruptcy case, whose address of record is PO Box 601389, Dallas, Texas 75360.

4.      Defendant Laura L. Stapleton is an individual who resides in Fairview, Collin County, Texas.  Stapleton can be served at her home address of 1161 Stacy Road, Fairview, Texas 75089, or wherever she may be found.

5.      Defendant William D. Stapleton is an individual who resides in Collin County, Texas.  William D. Stapleton can be served at his home address of 421 Forest Oaks Drive, Fairview, Texas, or wherever he may be found.

6.      Defendant Stapleton Enterprises, Inc. ("SEI") is a corporation, incorporated under the laws of the state of Texas, with its principal place of business located at 433 E. Las Colinas Blvd., Suite 1290, Irving, TX 75039.  SEI can be served through its registered agent Kris D. Hinckley at 433 E. Las Colinas Blvd., Ste. 1190, Irving, TX 75039.

7.      Debtor William Gary Stapleton ("Debtor") is the debtor in this Chapter 7 case. The Debtor's bankruptcy case was initiated when Starfish Investments, LP filed an involuntary petition against Debtor in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Court") on November 13, 2014 (the "Petition Date").  The Court entered an Agreed Order for Relief under Chapter 7 of the Bankruptcy Code ("Order for Relief") on

January 14, 2015.  [Docket No. 10 in Case 14-42478].  Debtor is not a party to this adversary

proceeding; however, a courtesy copy of this Complaint will be served on his attorney of record

in this proceeding, Christopher J. Moser, Quilling Selander Lownds Winslett & Moser, P.C.,

2001 Bryan Street, Suite 1800, Dallas, TX 75201.

## III.
## INTRODUCTION

8.      In this adversary proceeding, Trustee seeks to avoid and recover certain transfers

of assets (the Partition Agreement Assets[1]) the Debtor made to his wife (Defendant Laura

Stapleton) under a property partition agreement Debtor entered into so that he could shield his

assets from creditors.  Debtor received nothing of value in return for these transfers, and was

insolvent at the time he made them.  The transfers to Laura Stapleton are therefore recoverable as

actual and constructive fraudulent transfers under 11 U.S.C. § 548, as well as 11 U.S.C. § 544(b)

and applicable state law.  The Trustee also asserts a claim against Laura Stapleton for breach of

fiduciary duty.  Laura Stapleton is an attorney, and she represented both the Debtor and herself in

connection with the transfer of the Partition Agreement Assets.  In doing so, she breached her

fiduciary duty owed to Debtor, and thereby caused injury to him.

9.      Trustee thus brings the following claims against Defendant Laura Stapleton to

avoid and recover Debtor's transfer of the Partition Agreement Assets to her, to recover costs of

prosecuting the fraudulent transfer claims, and to recover damages based upon Laura Stapleton's

breach of fiduciary duty:

     a.  Count I: fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(A);

     b.  Count II: fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(B);

---

[1] Capitalized terms not defined in the Introduction shall have the meaning ascribed to them later in the Complaint.

    c.    Count III: fraudulent transfer claim under 11 U.S.C. § 544(b) and TUFTA § 24.005(a)(1);

    d.    Count IV: fraudulent transfer claim under 11 U.S.C. § 544(b) and TUFTA § 24.005(a)(2);

    e.    Count V: fraudulent transfer claim under 11 U.S.C. § 544(b) and TUFTA § 24.006(a);

    f.    Count VI: breach of fiduciary duty claim against Laura Stapleton;

    g.    Count XV: claim to recover the Partition Agreement Assets or their value under 11 U.S.C. § 550;

    h.    Count XVI: claim to recover attorneys' fees and costs under TUFTA § 24.013.

10.    In addition, the Trustee seeks to recover real property (the 1161 Property) worth at least $2 million transferred to SEI--an entity controlled by Debtor's father William D. Stapleton.  Debtor also made this transfer with intent to hinder, delay, or defraud his creditors. In addition, Debtor did not receive reasonably equivalent value in exchange for this transfer, and was insolvent at the time he made it.  The transfers to SEI are therefore recoverable as actual and constructive fraudulent transfers under 11 U.S.C. § 548, as well as 11 U.S.C. § 544(b) and applicable state law.  Moreover, the Trustee asserts additional claims against William D. Stapleton and SEI based on the transfer of the 1161 Property.

11.    Trustee brings the following claims against Defendants SEI and William D. Stapleton in connection with the transfer of the 1161 Property to SEI:

    a.    Count VII: fraudulent transfer claim against SEI under 11 U.S.C. § 548(a)(1)(A);

    b.    Count VIII: fraudulent transfer claim against SEI under 11 U.S.C. § 548(a)(1)(B);

c.  Count IX: fraudulent transfer claim against SEI under 11 U.S.C. § 544(b) and
TUFTA § 24.005(a)(1);

d.  Count X: fraudulent transfer claim against SEI under 11 U.S.C. § 544(b) and
TUFTA § 24.005(a)(2);

e.  Count XI: fraudulent transfer claim against SEI under 11 U.S.C. § 544(b) and
TUFTA § 24.006(a);

f.   Count XII: declaratory judgment claim that SEI holds no prepetition claim
against Debtor, and that the Debtor's transfer of 1161 Property to SEI was not on
account of an antecedent debt Debtor owed to SEI;

g.  Count XIII: in the alternative, a claim against SEI to avoid the transfer of the 1161
Property as a preference under 11 U.S.C. § 547(b);

h.  Count XIV: in the alternative, a claim against SEI to avoid the transfer of the
1161 Property as an "insider preference" under 11 U.S.C. § 544(b) and TUFTA §
24.006(b);

i.  Count XV: recovery of 1161 Property or its value under 11 U.S.C. § 550;

j.  Count XVI: claim to recover attorneys' fees and costs against SEI under TUFTA
§ 24.013;

k.   Count XVII: in the alternative, a claim against Defendants SEI and William D.
Stapleton for aiding and abetting breach of fiduciary duty.  At the time of the
transfer of the 1161 Property, the property was held in the name of a partnership
(the 1161 Partnership) that the Debtor owned and controlled.  As set forth below,
for purposes of the fraudulent transfer and preference claims against SEI, the
assets of the 1161 Partnership should be considered property of the Debtor.  If

they are not, however, the Trustee holds claims against Defendants SEI and William D. Stapleton for aiding and abetting breach of fiduciary duty. The Debtor owed fiduciary duties to the 1161 Partnership and its limited partners. The bankruptcy estate now owns the limited partnership interests of the 1161 Partnership that belonged to Debtor, and the Trustee seeks to avoid and recover the remaining limited partnership interests through the fraudulent transfer claims asserted against Defendant Laura Stapleton. Debtor's transfer of the 1161 Property to SEI gutted the value of the 1161 Partnership, and he thereby breached his fiduciary duties to the 1161 Partnership and its limited partners. Defendants SEI and William Stapleton aided and abetted this breach of fiduciary duty.

l.  Count XIII: exemplary damages against Defendants SEI and William Stapleton for aiding and abetting breach of fiduciary duty.

# IV.
# BACKGROUND

**A.    The 1161 Property.**

12.    Debtor resides at 1161 Stacy Road, Fairview, Texas, which consists of a 21 acre tract of land with a 4000 square foot primary residence, two (2) other homes, a barn, and a horse yard (the "1161 Property"). Defendant began residing on the 1161 Property in 2008 and had, at the outset, a mortgage payment of $12,500 per month. Title to the 1161 Property was in the name of 1161 Stacy Rd, Limited Partnership (the "1161 Partnership").

13.    1161 Partnership borrowed $1,480,000 from Benchmark Bank on or about October 23, 2008, which was secured by the underlying 1161 Property. The 1161 Property was posted for foreclosure on July 14, 2014. Upon information and belief, prior to July 2014, the 1161 Partnership was owned as follows:

     a.  1161 Stacy Road Development Corp. (General Partner) (1%)

          i.  Debtor (shareholder)

          ii.  Mark Smith (shareholder)

     b.  MS Family Limited Partnership (Limited Partner) (49.5%)

          i.  Mark Smith (owner/control person)

     c.  1171 Stacy Road Real Estate Corp. f/k/a Windridge Farm, Inc. (Limited Partner) (49.5%)

          i.  Debtor (owner/control person)

          ii.  Laura Stapleton (owner/control person)

Upon information and belief, the 1161 Property has a fair market value that is equal to or exceeds $2,000,000—an amount well in excess of the mortgage debt formerly owed to Benchmark Bank.  The transfer of this property is discussed below.

**B.**    **Debtor's Fraudulent Transfer of Assets to His Wife Pursuant to the Partition Agreement.**

14.     Allegedly, on New Year's Day in 2012, Laura Stapleton, Debtor's wife and an attorney licensed in the State of Texas, and Debtor entered into a "Partition Agreement" that Laura Stapleton drafted.  Debtor has previously testified that Laura Stapleton served as the attorney for both Debtor and herself in connection with the Partition Agreement.

15.     Laura Stapleton has admitted that Debtor was insolvent in 2012, and Debtor admits he has not had a job for several years.  Even so, neither Laura Stapleton nor Debtor identify the date on which the Partition Agreement was entered (on the agreement itself or in previous deposition testimony).  Rather than identifying the execution date, the Partition Agreement states that it has an "effective date of January 1, 2012."  Debtor's and Laura Stapleton's reference to the "effective date" of the Partition Agreement—but not the date the

document was actually signed—is deliberately designed to prevent creditors from ascertaining the exact dates when the transfers made pursuant to the agreement actually occurred.  Upon information and belief, Debtor and Laura Stapleton entered into the Partition Agreement within two years of the Petition Date.

16.    The Partition Agreement identifies certain of Debtor's "community liabilities" on Schedule E, including without limitation all of Debtor's liabilities arising from entities shown on Schedule C to the agreement, all liabilities arising from a personal vehicle loan, and all liabilities relating to property located at 1171 Stacy Road, Fairview Texas 75069 (collectively, the "Debtor Schedule E Liabilities"). The Partition Agreement also identifies certain of Debtor's obligations on Schedule F, which include the Debtor's liability to Starfish Investments, LP ("Starfish") in connection with certain promissory notes (the "Starfish Notes") (the liabilities on Schedule F, "Debtor Schedule F Liabilities").  The Partition Agreement provides that Debtor will satisfy the Debtor Schedule E Liabilities, the Debtor Schedule F Liabilities, and all taxes, interest or penalties that Debtor may owe to any taxing authority from his separate property only.  It further provides that Debtor will hold harmless and indemnify Laura Stapleton from any claim or loss arising from such liabilities (such indemnity obligations, the "Debtor Indemnity Obligations")

17.    In addition, under the Partition Agreement, Debtor and Laura Stapleton identified certain community property that they partitioned and exchanged pursuant to the Partition Agreement. Debtor transferred to Laura Stapleton all of his interest in the entities identified on Schedule D to the Partition Agreement, and shown in the chart below as "Assets Transferred to Laura Stapleton" (collectively, the "Partition Agreement Assets"). The Partition Agreement Assets purportedly became the separate property of Laura Stapleton under the Partition Agreement (collectively, all transfers of the Partition Agreement Assets, the "Laura Stapleton

Transfers"). In exchange, Laura Stapleton transferred to Debtor her interest in the property identified on Schedule C to the Agreement, and shown in the chart below as "Assets Transferred to Debtor."

| Assets Transferred to Debtor | Assets Transferred to Laura Stapleton |
|---|---|
| 1161 Stacy Road Development Corp. ("1161 Stacy Rd Dv Corp."); <br><br> United Texas Petroleum, Inc.; <br><br> Titus Energy, LLC; <br><br> Summit Renewable Resources, LLC; <br><br> CTS Holdings, Inc.; <br><br> 1171 Stacy Road Real Estate Corp ("1171 Stacy Rd Corp."); <br><br> CTS Exploration & Development LLC | "Law Office of Laura L. Stapleton, PC and any subsequent entity or law practice in which Laura Stapleton is a partner or shareholder"; <br><br> "Windridge Farm, Inc.(formerly Namaste Farm, Inc.), including but not limited to all right, title and interest in and to all tractors, mowers and other implements, trailers, horses, horse trailers, saddles, bridles, and other misc. equipment and tack related to such horses and all right, title and interest in and to the 49.5% limited partnership interest in [1161 Partnership];" <br><br> Windridge Feed, Inc.; <br><br> North Platte Energy Group, LLC; <br><br> Discovery Capital Management, LLC. |

18.    Laura Stapleton claims to have valued (prior to January 1, 2012) the assets exchanged between herself and Debtor, and based on this valuation, concluded there was a fair exchange. But in her deposition testimony on September 23, 2014, she could not testify to the value of any entity shown in the chart above, other than 1171 Stacy Rd Corp—which allegedly had a value of $750,000.

19.    Debtor testified on September 22, 2014 that the majority of the entities he obtained through the Partition Agreement were worthless.

20.    Assuming the Partition Agreement was actually signed on January 1, 2012, the only entities Debtor received that possibly had value were 1171 Stacy Rd Corp. and 1161 Stacy Rd Dv Corp. Upon information and belief, as of January 1, 2012, 1161 Stacy Rd Dv Corp.

owned only a 1% interest in 1161 Partnership.  By contrast, Laura Stapleton obtained Windridge

Farm, Inc. which held a 49.5% interest in 1161 Partnership as a result of the Partition

Agreement.

21.     Although Debtor obtained 1171 Stacy Rd Corp. under the Partition Agreement, to

the extent that entity formerly owned a 49.5% interest in 1161 Partnership, the Partition

Agreement stripped the 49.5% ownership interest from 1171 Stacy Rd. Corp., and gave it to

Laura Stapleton (by virtue of the transfer of Windridge Farm, Inc. to her).

22.     Upon information and belief, no true valuation of these entities was ever done,

and the Debtor's and Laura Stapleton's purpose for entering into the Partition Agreement was to

transfer Debtor's ownership of any entity with any value to Laura Stapleton in an effort to shield

those assets from Debtor's creditors, including Starfish Investments, LP ("Starfish").  At the time

of the Laura Stapleton Transfers, Debtor was insolvent and was unable to repay his obligations to

Starfish, as well as his other obligations.  Debtor made the Laura Stapleton Transfers to hinder,

delay or defraud creditors (including Starfish) from realizing on his assets to satisfy their claims.

**C.     Debtor's Fraudulent Transfer of 1161 Property to Debtor's Father William Stapleton /Stapleton Enterprises, Inc. ("SEI").**

23.     Sometime in August or September 2014, Defendant SEI, a company owned and

controlled by Debtor's father William D. Stapleton, provided either Debtor or 1161 Partnership

approximately $1.4 million to pay off Benchmark Bank (the holder of the mortgage relating to

the 1161 Property), and to buy out Mark Smith's interest in 1161 Partnership at the same time.

There is, however, no loan agreement, promissory note, or other documents to support any

inference that SEI's provision of funds was anything but a gift from SEI to Debtor and/or the

1161 Partnership.  Upon information and belief, as of July 17, 2014, there was an outstanding

balance of $1,017,985.00 owed on the 1161 Property to Benchmark Bank.

ORIGINAL COMPLAINT

24.     On or around July 17, 2014, Mark Smith (a person believed to be in control of at least 49.5% of 1161 Partnership) transferred his interest to Debtor and/or Windridge Farms, Inc. (Defendant Laura Stapleton's wholly owned company), leaving the ownership structure of 1161 Partnership as follows:

      a.   1161 Development Corp. (General Partner) (1%)

          i.   Debtor (shareholder)

      b.   Debtor (Limited Partner) (49.5%)

      c.   Windridge Farm, Inc. (Limited Partner) (49.5%)

          i.   Laura Stapleton (owner/control person)

25.     On September 30, 2014, Debtor caused the 1161 Property (which was then free and clear of any liens) to be transferred to SEI.

26.     Debtor was insolvent at the time of the transfer of 1161 Property to SEI.  SEI provided no consideration for the transfer, and Trustee believes that the value of the 1161 Property at the time of its transfer was at least $2 million. Realizing that SEI received property whose value significantly exceeded any consideration SEI has contended it paid for the property, Debtor refused to allow any appraiser access to the 1161 Property before the involuntary Petition Date.

27.     Debtor and Laura Stapleton continue to reside on the 1161 Property—just as they did before its transfer to SEI—enjoying their lavish lifestyle while Debtor stiffs his creditors. Debtor's purpose in transferring the 1161 Property was to hinder, delay or defraud creditors, including Starfish—which at the time of the transfer was actively pursuing collection on a judgment it had obtained against Debtor.

ORIGINAL COMPLAINT

28.     Although title to the 1161 Property was in the name of 1161 Partnership before its transfer to SEI, Debtor controlled the 1161 Partnership at the time of the transfer of the property to SEI.  Debtor owned 100% of 1161 Development Corp.—the general partner of the 1161 Partnership—and he directed the affairs of SEI.  Moreover, Debtor owned at least 49.5% of the limited partnership interests in 1161 Partnership, and Defendant Stapleton (through her ownership of Windridge Farm, Inc.) owned the remaining limited partnership interests in 1161 Partnership. The 1161 Partnership did not observe corporate or partnership formalities, was undercapitalized, and was essentially used to shield Debtor's assets with the intent to hinder, delay, and defraud creditors.

29.     Accordingly, 1161 Partnership's assets should be considered assets of Debtor and the bankruptcy estate.  As a result of Debtor's transfer of the 1161 Property to SEI, Debtor essentially transferred an asset with substantial value for far less than reasonable equivalent value, and he did so to hinder, delay and defraud creditors.

## V.
## CAUSES OF ACTION

**A.     Count I: Avoidance of Fraudulent Transfer to Defendant Laura Stapleton Under 11 U.S.C. § 548(a)(1)(A) – Actual Fraud.**

30.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

31.     As part of the Laura Stapleton Transfers, Debtor transferred his interests in the Partition Agreement Assets to Laura Stapleton.

32.     In addition, under the Partition Agreement, Debtor incurred the Debtor Indemnity Obligations in favor of Laura Stapleton.

12

ORIGINAL COMPLAINT

33.     Upon information and belief, the Laura Stapleton Transfers were made on or within two years before the Petition Date, and the Debtor Indemnity Obligations were incurred on or within two years before the Petition Date.

34.     The Debtor made the Laura Stapleton Transfers with the actual intent to hinder, delay, or defraud Debtor's creditors. Likewise, the Debtor incurred the Debtor Indemnity Obligations with the actual intent to hinder, delay or defraud Debtor's creditors.

35.     Based on the foregoing, the Court should avoid the Laura Stapleton Transfers and the Debtor Indemnity Obligations pursuant to 11 U.S.C. § 548(a)(1)(A).

**B.     Count II: Avoidance of Fraudulent Transfer to Defendant Laura Stapleton Under 11 U.S.C. § 548(a)(1)(B) – Constructive Fraud.**

36.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

37.     As part of the Laura Stapleton Transfers under the Partition Agreement, Debtor transferred his interests in the Partition Agreement Assets to Laura Stapleton.

38.      In addition, under the Partition Agreement, Debtor incurred the Debtor Indemnity Obligations in favor of Laura Stapleton.

39.     Upon information and belief, the Laura Stapleton Transfers were made on or within two years before the Petition Date, and the Debtor Indemnity Obligations were incurred on or within two years before the Petition Date.

40.     The Debtor received less than a reasonably equivalent value in exchange for the Laura Stapleton Transfers and the Debtor Indemnity Obligations.

41.     Debtor was insolvent on the date of the Laura Stapleton Transfers and the incurrence of the Debtor Indemnity Obligations, or became insolvent as a result of the Laura Stapleton Transfers and Debtor Indemnity Obligations.

42.     After the Debtor entered into the Partition Agreement (and thereby made the Stapleton Transfers and incurred the Debtor Indemnity Obligations), the Debtor was left with unreasonably small capital.

43.     As a result of the Partition Agreement, Debtor intended to incur, or believed that he would incur, debts that would be beyond the Debtor's ability to pay as they became due.

44.     Based on the foregoing, the Court should avoid the Laura Stapleton Transfers and the Debtor Indemnity Obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

**C.      Count III: Avoidance of Fraudulent Transfer to Defendant Laura Stapleton Under 11 U.S.C. § 544(b) and TUFTA § 24.005(a)(1)—Actual Fraud.**

45.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

46.     Pursuant to 11 U.S.C. § 544(b), a trustee may avoid any transfer incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable unsecured claim.  Creditor Starfish presently holds an allowable unsecured claim against the Debtor in connection with the Starfish Notes, and Starfish held an allowable unsecured claim against the Debtor in connection with the Starfish Notes before the Laura Stapleton Transfers.

47.     The Texas Uniform Fraudulent Transfer Act ("TUFTA"), as codified in §§ 24.001 *et seq*. of the Texas Business and Commerce Code is applicable state law in this adversary proceeding.  Under TUFTA § 24.005(a)(1), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor.

48.     As part of the Laura Stapleton Transfers under the Partition Agreement, Debtor transferred his interests in the Partition Agreement Assets to Laura Stapleton.

49.    In addition, under the Partition Agreement, Debtor incurred the Debtor Indemnity Obligations in favor of Laura Stapleton.

50.    Debtor made the Laura Stapleton Transfers with actual intent to hinder, delay, or defraud Debtor's creditors, and actually did hinder, delay, or defraud Debtor's creditors, including but not limited to, Starfish.

51.    The Debtor incurred the Debtor Indemnity Obligations with actual intent to hinder, delay, or defraud Debtor's creditors, and actually did hinder, delay, or defraud Debtor's creditors, including but not limited to, Starfish.

52.    Based on the foregoing, the Court should avoid the Laura Stapleton Transfers and the Debtor Indemnity Obligations pursuant to 11 U.S.C. § 544(b) and TUFTA § 24.005(a)(1).

**D.    Count IV: Avoidance of Fraudulent Transfer to Defendant Laura Stapleton Under 11 U.S.C. § 544 and the TUFTA § 24.005(a)(2)—Constructive Fraud.**

53.    The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

54.    Pursuant to 11 U.S.C. § 544(b), a trustee may avoid any transfer incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable unsecured claim.  Creditor Starfish presently holds an allowable unsecured claim against the Debtor in connection with the Starfish Notes, and Starfish held an allowable unsecured claim against the Debtor in connection with the Starfish Notes before the Stapleton Transfers.

55.    Under TUFTA § 24.005(a)(2), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in business or a

transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

56.     As part of the Laura Stapleton Transfers under the Partition Agreement, Debtor transferred his interests in the Partition Agreement Assets to Laura Stapleton.

57.     In addition, under the Partition Agreement, Debtor incurred the Debtor Indemnity Obligations in favor of Laura Stapleton.

58.     Debtor did not receive a reasonably equivalent value in exchange for the Laura Stapleton Transfers.

59.     Debtor did not receive a reasonably equivalent value in exchange for the incurrence of the Debtor Indemnity Obligations.

60.     After Debtor entered into the Partition Agreement, the Debtor's remaining assets were unreasonably small in relation to the business, transactions, and obligations of the Debtor.

61.      Moreover, at the time the Debtor entered into the Partition Agreement, Debtor intended to incur, or believed or reasonably believed that he would incur, debts beyond his ability to pay as they became due.

62.     Based on the foregoing, the Court should avoid the Laura Stapleton Transfers pursuant to TUFTA § 24.005(a)(2).

**E.     Count V: Avoidance of Fraudulent Transfer to Defendant Stapleton Under 11 U.S.C. § 544 and TUFTA § 24.006(a) —Constructive Fraud.**

63.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

64.     Pursuant to 11 U.S.C. § 544(b), a trustee may avoid any transfer incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable unsecured claim.  Creditor Starfish presently holds an allowable unsecured claim against the Debtor in connection with the Starfish Notes.

65.     Under TUFTA § 24.006(a), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

66.     Prior to the Laura Stapleton Transfers, creditor Starfish, among others, held a claim against the Debtor in connection with the Starfish Notes.

67.     Debtor did not receive a reasonably equivalent value in exchange for the Laura Stapleton Transfers.

68.     Debtor did not receive a reasonably equivalent value in exchange for the incurrence of the Debtor Indemnity Obligations.

69.     Debtor was insolvent at the time of the Laura Stapleton Transfers and the incurrence of the Debtor Indemnity Obligations, or became insolvent as a result of such transfers and obligations.

70.     Debtor intended to incur, or believed or reasonably believed that he would incur, debts beyond his ability to pay as they became due.

71.     Based on the foregoing, the Court should avoid the Laura Stapleton Transfers pursuant to 11 U.S.C. § 544(b) and TUFTA § 24.006(a).

72.     .

**F.      Count VI: Breach of Fiduciary Duty Claim Against Laura Stapleton.**

73.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

74.     Because she represented Debtor as his attorney in connection with the Partition Agreement, Laura Stapleton owed the Debtor a fiduciary duty.

75.     But Laura Stapleton had conflicts of interest in connection with this representation.  Laura Stapleton was a party to the Partition Agreement, and she benefitted from transfers of the Partition Agreement Assets to her. Laura Stapleton placed her interests ahead of the Debtor's interests.  The result was that the Partition Agreement was one-sided in her favor.

76.     Laura Stapleton thus breached her fiduciary duty owed to the Debtor, and this breach proximately caused injury to the Debtor because he transferred assets of substantial value to Laura Stapleton, and incurred the Debtor Indemnity Obligations.

77.      Laura Stapleton is thus liable for breach of fiduciary duty to the Debtor.  The Trustee, on behalf of the bankruptcy estate, seeks recovery of actual and exemplary damages as a result of this breach.

**G.      Count VII: Avoidance of Fraudulent Transfer to SEI Under 11 U.S.C. §548(a)(1)(A) – Actual Fraud.**

78.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

79.     As set forth more fully above, Debtor controlled the 1161 Partnership at the time of the transfer of the 1161 Property to SEI. The 1161 Partnership did not observe corporate or partnership formalities, was undercapitalized, and was essentially used to shield Debtor's assets with the intent to hinder, delay, and defraud creditors. For purposes of this fraudulent transfer

Original Complaint

claim, the assets of the 1161 Partnership (the 1161 Property) should be considered assets of the Debtor and the bankruptcy estate.

80.     On or around September 30, 2014, the 1161 Property was transferred to Defendant SEI (the "SEI Transfer"), within two years before the Petition Date.

81.     The Debtor made the SEI Transfer with the actual intent to hinder, delay, or defraud Debtor's creditors, including Starfish.

82.     Based on the foregoing, the Court should avoid the SEI Transfer pursuant to 11 U.S.C. § 548(a)(1)(A).

**H.      Count VIII: Avoidance of Fraudulent Transfer to SEI Under 11 U.S.C.
§548(a)(1)(B) – Constructive Fraud.**

83.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

84.     As previously alleged, the assets of the 1161 Partnership (the 1161 Property) should be considered assets of the Debtor and the bankruptcy estate.

85.     The SEI Transfer occurred on or around September 30, 2014, within two years before the Petition Date.

86.     The Debtor received less than a reasonably equivalent value in exchange for the SEI Transfer.

87.     Debtor was insolvent on the date of the SEI Transfer, or became insolvent as a result of the SEI Transfer.

88.     After the SEI Transfer, Debtor was left with unreasonably small capital.

89.     As a result of the SEI Transfer, Debtor intended to incur, or believed or reasonably believed that he would incur, debts beyond his ability to pay as they became due.

90.     Based on the foregoing, the Court should avoid the SEI Transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

**I.      Count IX: Avoidance of Fraudulent Transfer to SEI Under 11 U.S.C. § 544(b) and TUFTA § 24.005(a)(1)—Actual Fraud.**

91.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

92.     Pursuant to 11 U.S.C. § 544(b), a trustee may avoid any transfer incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable unsecured claim.  Creditor Starfish presently holds an allowable unsecured claim against the Debtor in connection with the Starfish Notes, and Starfish held an allowable unsecured claim against Debtor at the time of the SEI Transfer.

93.     Under TUFTA § 24.005(a)(1), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor.

94.     As previously alleged, the assets of the 1161 Partnership (the 1161 Property) should be considered assets of the Debtor and the bankruptcy estate.

95.     The SEI Transfer occurred on or around September 30, 2014, within four years before the Petition Date.

96.     The SEI Transfer was made with actual intent to hinder, delay, or defraud Debtor's creditors, and actually did hinder, delay, or defraud Debtor's creditors, including but not limited to, Starfish.

97.     Based on the foregoing, the Court should avoid the SEI Transfer pursuant to 11 U.S.C. §544(b) and TUFTA § 24.005(a).

**J.      Count X: Avoidance of Fraudulent Transfer to SEI Under 11 U.S.C. § 544(b) and TUFTA § 24.005(a)(2)—Constructive Fraud.**

98.      The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

99.      Pursuant to 11 U.S.C. § 544(b), a trustee may avoid any transfer incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable unsecured claim.  Creditor Starfish presently holds an allowable unsecured claim against the Debtor in connection with the Starfish Notes, and Starfish held an allowable unsecured claim against Debtor at the time of the SEI Transfer.

100.     Under TUFTA § 24.005(a)(2), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

101.     As previously alleged, the assets of the 1161 Partnership (the 1161 Property) should be considered assets of the Debtor and the bankruptcy estate.

102.     The SEI Transfer (the transfer of the 1161 Property to SEI) occurred on or around September 30, 2014, and was therefore within four years before the Petition Date.

103.     Debtor did not receive a reasonably equivalent value in exchange for the SEI Transfer.

104.    After the SEI Transfer, the Debtor's remaining assets were unreasonably small in relation to the business, transactions, and obligations of the Debtor.

105.    At the time of the SEI Transfer, Debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

106.    Based on the foregoing, the Court should avoid the SEI Transfer pursuant to 11 U.S.C. § 544(b) and TUFTA § 24.005(a)(2).

**K.    Count XI: Avoidance of Fraudulent Transfer to SEI Under 11 U.S.C. § 544(b) and and TUFTA § 24.006(a).**

107.    The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

108.    Pursuant to 11 U.S.C. § 544(b), a trustee may avoid any transfer incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable unsecured claim.  Creditor Starfish presently holds an allowable unsecured claim against the Debtor in connection with the Starfish Notes, and Starfish held an allowable unsecured claim against Debtor at the time of the SEI Transfer.

109.    Under TUFTA § 24.006(a), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

110.    As previously alleged, the assets of the 1161 Partnership (the 1161 Property) should be considered assets of the Debtor and the bankruptcy estate.

111.    Prior to the SEI Transfer, creditor Starfish, among others, held a claim against the Debtor.

112.    The Debtor made the SEI Transfer without receiving a reasonably equivalent value in exchange for the transfer.

113.    Debtor was insolvent at the time of the SEI Transfer.

114.    Based on the foregoing, the Court should avoid the SEI Transfer pursuant to 11 U.S.C. § 544(b) and TUFTA § 24.006(a).

**L.    Count XII: Declaratory Judgment that SEI Holds No Prepetition Claim Against the Debtor.**

115.    The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

116.    The Debtor includes purported debts owed to SEI in the Debtor's bankruptcy schedules.  On Schedule F of his bankruptcy schedules, Debtor states that SEI holds unsecured claims against Debtor in the amount of $3,342,823.02 for "Business Debt" and $300,000.00 for "Personal debt."

117.    But there is no documentation for such alleged debts—no promissory notes, loan agreement, or any other document to evidence them.  Moreover, the purported debts have no maturity dates, no repayment terms, no interest rates, no collateral to secure them, nor any other characteristics of true debts. Accordingly, any moneys provided from SEI to the Debtor were gifts, and the Debtor was not obligated to repay the funds to SEI.

118.    Trustee hereby seeks an order declaring that SEI holds no valid claims against the Debtor, and that the Debtor's transfer of the 1161 Property to SEI was not a transfer on account of an antecedent debt owed from the Debtor to SEI.

ORIGINAL COMPLAINT

**M.     Count XIII: In the Alternative, Avoidance of Preferential Transfer to SEI Under 11 U.S.C. § 547.**

119.    The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

120.    In the alternative, if the Court determines that SEI holds valid claims against Debtor, and the SEI Transfer was a transfer on account of an antecedent debt, then the SEI Transfer should be avoided as a preferential transfer pursuant to 11 U.S.C. § 547.

121.    Debtor transferred an interest of the Debtor in property (the 1161 Property), specifically, the SEI Transfer. As previously alleged, the 1161 Property should be considered the Debtor's property and part of the bankruptcy estate.

122.    The SEI Transfer was made to or for the benefit of SEI.

123.    The SEI Transfer was made while Debtor was insolvent.

124.    Defendant SEI is an insider of the Debtor.

125.    The SEI Transfer was made within one (1) year prior to the Petition Date.

126.    The SEI Transfer enabled SEI to receive more than it would have if the case were a case under chapter 7, the SEI Transfer had not been made, and SEI received payment of its debt pursuant to the provisions of the Bankruptcy Code.

127.    Based on the foregoing, if the Court determines that SEI holds valid claims against the Debtor, and the SEI Transfer was a transfer on account of an antecedent debt, then the SEI Transfer is avoidable under 11 U.S.C. § 547(b).

**N.     Count XIV: In the Alternative, Avoidance of "Insider Preference" to SEI Under 11 U.S.C. § 544(b) and TUFTA § 24.006(b).**

128.    The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

ORIGINAL COMPLAINT

129.    In the alternative, if the Court determines that SEI holds valid claims against Debtor, and the SEI Transfer was a transfer on account of an antecedent debt, then the SEI Transfer should be avoided pursuant to 11 U.S.C. § 544(b) and TUFTA § 24.006(b).

130.    Pursuant to 11 U.S.C. § 544(b), a trustee may avoid any transfer incurred by the debtor that is voidable under applicable state law by a creditor holding an allowable unsecured claim.  Creditor Starfish presently holds an allowable unsecured claim against the Debtor in connection with the Starfish Notes, and Starfish held an allowable unsecured claim against Debtor at the time of the SEI Transfer.

131.    Under TUFTA § 24.006(b), a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

132.    Through the SEI Transfer, Debtor transferred an interest of the Debtor in property (the 1161 Property) to SEI. As previously alleged, the 1161 Property should be considered the Debtor's property and part of the bankruptcy estate.

133.    Defendant SEI, owned by Debtor's father, is an insider.

134.    Prior to the SEI Transfer, creditor Starfish, among others, had a claim against the Debtor.

135.    If the Court determines that SEI holds valid claims against the Debtor, the SEI Transfer was made on account of an antecedent debt.

136.    Debtor was insolvent at the time of the SEI Transfer.

137.    SEI had reasonable cause to believe the Debtor was insolvent at the time of the SEI Transfer.

138.     Based on the foregoing, the Court should avoid the SEI Transfer pursuant to 11 U.S.C. § 544(b) and TUFTA § 24.006(b).

**O.     Count XV: Recovery of Avoided Transfers Under 11 U.S.C. § 550 (Against Defendants Laura Stapleton and SEI).**

139.     The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

140.     Pursuant to 11 U.S.C. § 550(a), a trustee may recover the property transferred or the value of such property from the initial transferee, the entity for whose benefit such transfer was made, or any mediate or immediate transferee of transfers avoided under 11 U.S.C. §§ 544, 547, and 548.

141.     Laura Stapleton received and benefitted from the Laura Stapleton Transfers; therefore, pursuant to 11 U.S.C. § 550(a), Trustee is entitled to recover from Laura Stapleton, or any immediate or mediate transferee of Laura Stapleton, the Partition Agreement Assets or the value of such assets, as determined by this Court.

142.     Defendant SEI received and benefitted from the SEI Transfer; therefore, pursuant to 11 U.S.C. § 550(a), Trustee is entitled to recover from Defendant SEI, or any immediate or mediate transferee of Defendant SEI, the 1161 Property or the value of such property, as determined by this Court.

**P.     Count XVI: Recovery of Costs Under TUFTA § 24.013 Against Defendants SEI and Laura Stapleton.**

143.     The foregoing paragraphs are incorporated by reference as if fully restated herein.

144.     Section 24.013 of TUFTA provides for the recovery of costs and reasonable attorneys' fees "as are equitable and just."

145.     Based on the facts and circumstances surrounding the Stapleton Transfers and SEI Transfer, as alleged herein, it is equitable and just that the Trustee recover her costs and

reasonable attorneys' fees.  Therefore, pursuant to TUFTA § 24.013, Trustee  seeks recovery of

costs, including reasonable attorneys' fees and expenses, incurred in connection with preparing

and filing pleadings in this adversary proceeding and in prosecuting this adversary proceeding.

**Q.    Count XVII: In the Alternative, Aiding and Abetting Breach of Fiduciary Duty Against Defendant SEI and William D. Stapleton.**

146.    The foregoing paragraphs are incorporated by reference as if fully restated herein.

147.    This Count XVI is pled in the alternative to the fraudulent transfer and preference

claims of Trustee against SEI. As previously alleged, for purposes of these claims, the 1161

Property should be considered property of the Debtor and the Debtor's bankruptcy estate.  If the

1161 Property is not considered property of the Debtor and the Debtor's estate for these

purposes, however, and is instead considered property of the 1161 Partnership, then the Trustee

is entitled to assert this Count XVI against Defendants SEI and William D. Stapleton.

148.    The Debtor's bankruptcy estate is the owner of the Debtor's limited partnership

interests in the 1161 Partnership, which constitute at least 49.5% of such interests.  And through

the fraudulent transfer claims asserted against Laura Stapleton, the Trustee seeks to avoid and

recover the entities that own the remaining limited partnership interests (and which were

transferred to Laura Stapleton under the Partition Agreement).  The General Partner of the 1161

Partnership (1161 Development Corp.) and the Debtor (who was the owner of the General

Partner, and controlled 1161 Partnership) owed fiduciary duties to 1161 Partnership and the

limited partners. Debtor and General Partner breached their fiduciary duties to 1161 Partnership

and to the limited partners by making the SEI Transfer, and Defendants SEI and William D.

Stapleton aided and abetted these breaches.  These breaches caused damages to the limited

partners of 1161 Partnership.  The Trustee is thus entitled to assert this claim against Defendants

SEI and William D. Stapleton on behalf of the bankruptcy estate, which owns the Debtor's

ORIGINAL COMPLAINT

limited partnership interests, and which seeks to recover the partnership interests held by Laura Stapleton through her ownership of entities transferred to her under the Partition Agreement.

149.     At the time of the SEI Transfer, Debtor was the sole owner and manager of 1161 Development Corp., the General Partner of 1161 Partnership. In this role, Debtor himself, as well as 1161 Development Corp., owed fiduciary duties to both 1161 Partnership and to the limited partners of the partnership.

150.     By making the SEI Transfer, Debtor and 1161 Partnership breached their fiduciary duties to the limited partners and the 1161 Partnership by transferring the 1161 Property—the only asset of the 1161 Partnership, and which (on information and belief) had a value in excess of $2 million—to SEI, and receiving nothing of value in return.   The SEI Transfer therefore gutted the 1161 Partnership entirely.

151.     These breaches of fiduciary duties resulted in injury to the limited partners, the 1161 Partnership, and ultimately the Debtor's estate, while benefiting SEI.

152.     SEI and William D. Stapleton (who controls SEI) knowingly induced the Debtor and the General Partner to breach their fiduciary duties to the 1161 Partnership and the Limited Partners, and participated in these breaches.

153.     Based on the foregoing, the Court should award Trustee, on behalf of the Debtor's estate, actual damages incurred by the 1161 Partnership and its limited partners as a result of William Stapleton's and SEI's inducing and aiding in Debtor's and General Partner's breaches of fiduciary duties to the 1161 Partnership and is limited partners.

**R.     Count XVIII: Exemplary Damages for Breach of Fiduciary Duty Against Defendants SEI and William Stapleton.**

154.     The foregoing paragraphs are incorporated by reference as if fully restated herein.

ORIGINAL COMPLAINT

155.    The actions of SEI and William Stapleton described above in inducing and aiding

Debtor's and General Partner's breaches of fiduciary duties were intentional and meant to

provide SEI and William Stapleton with an additional, unwarranted benefit.  Therefore, Trustee

is entitled to an award of exemplary damages against SEI and William Stapleton.

# VI.
## PRAYER

Based on all the foregoing allegations, Trustee respectfully request this Court (i) avoid

the Laura Stapleton Transfers and return the property or value of such property to the Trustee for

the benefit of the Debtor's estate; (ii) enter judgment holding Laura Stapleton liable for breach of

fiduciary duty, and award actual and exemplary damages;  (iii) avoid the SEI Transfer and return

the property or value of such property to the Trustee for the benefit of the Debtor's estate; (iv)

enter judgment (a) declaring that SEI does not hold valid prepetition claims against Debtor, and

Debtor did not owe SEI an antecedent debt at the time of the SEI Transfer; or, in the alternative

(b) avoiding the SEI Transfer as a preferential transfer and return the property or value of such

property to the Trustee for the benefit of the Debtor's estate; (v) in the alternative, if the transfer

of the 1161 Property is determined not to constitute a transfer of the Debtor's interest in

property, awarding actual damages against SEI and William Stapleton for inducing and aiding

and abetting Debtor's and  breaches of fiduciary duties; and awarding exemplary damages

against SEI for intentionally inducing and aiding Debtor's breach of fiduciary duty; (vi) granting

Trustee reasonable attorneys' fees and costs incurred in preparing and filing the pleadings in this

adversary proceeding and in prosecuting this adversary proceeding; and (vii) grant Trustee such

other relief as she is entitled at law or in equity.

ORIGINAL COMPLAINT

Respectfully Submitted,

*/s/ J. Sean Lemoine*
J. Sean Lemoine
State Bar No. 24027443
Jonathan S. Covin
State Bar No. 24031975
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 100
Dallas, TX 75204
Telephone:  (214) 692-6200
Facsimile:  (214) 692-6255
Email:  sean.lemoine@wickphillips.com
Email: jonathan.covin@wickphillips.com

Lauren K. Drawhorn
State Bar No. 24074528
Wick Phillips Gould & Martin, LLP
100 Throckmorton Street, Suite 500
Fort Worth, TX 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
Email: lauren.drawhorn@wickphillips.com

**SPECIAL COUNSEL FOR THE CHAPTER 7
TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 27, 2015, the foregoing instrument was served via ECF electronic delivery on all persons and parties consenting to such service.

*/s/ J. Sean Lemoine*
J. Sean Lemoine